## Lorenz Fischer v. F. H. Sanford, Appellant.

*Nuisance—Negligently constructed stable.*

The mere erection and maintenance of a livery stable on a city street is not a nuisance per se. It may, however, become a nuisance if negligently constructed or maintained. The burden of proving such negligence is upon the plaintiff, and, the evidence being conflicting, the question of negligence is properly for the jury.

*Measure of damages—Stable as a nuisance.*

The question of negligent construction or maintenance of a stable being established so as to render it a nuisance, the measure of damages is the extent of injury caused by defendant's negligence. It is proper for the jury to take into consideration the difference of rental value of the adjoining property before and after the negligent construction, also whether sickness in plaintiff's family was caused by the defendant's negligence, as well as the cost and expense of moving from the premises, providing such moving was compelled by defendant's negligence.

Argued Oct. 17, 1899. Appeal, No. 142, Oct. T., 1899, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1898, No. 393, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEEBER, J.

Trespass. Before BEITLER, J.

It appears from the record that plaintiff complained that defendant maintained a nuisance in a livery stable erected and conducted by him on the premises adjoining plaintiff's house. Plaintiff's evidence tended to show that the stable was so conducted as to render his house uninhabitable by reason of noise,

foul and offensive odors and drainage from the stable into the cellar of plaintiff's house whereby plaintiff's furniture became injured and the health of his family impaired. Defendant introduced evidence tending to show that the stable was conducted in a particularly sanitary and careful manner, intending to rebut all evidence of culpable negligence.

At the trial plaintiff submitted among others the following points:

[2. If the business of the defendant was so conducted as to affect the use of plaintiff's property, or the health of its occupants, these tangible and substantial injuries will sustain an action for damages. *Answer:* I affirm that point, if you find that the injuries were due to the negligence of the defendant.] [2]

[4. If the jury believe that the horses in the stable kicked and stamped at night so as to affect the rest and sleep of the plaintiff and his family, or that foul odors from the stable permeated the plaintiff's house, rendering it unfit for occupation as a dwelling, affecting the health of the occupants, or that water or urine from the stable penetrated into plaintiff's cellar, rendering it damp and foul, and that cockroaches from the stable invaded plaintiff's house in large numbers so as to inflict injury on plaintiff and his family, all of these are elements of damage which the jury can take into consideration in arriving at a verdict. *Answer:* I affirm that point gentlemen, if you find that the defendant was negligent. As illustrating that point let me refer to the question of the floor of the annex to the stable. The testimony of the plaintiff is simply that there was dampness found in his cellar. There was no evidence on his part that he had ever gone into this stable and attempted to make any examination as to what was under the floor of the stalls, so that, when he closed his case, he had not presented any evidence whatever upon which you might have found that the defendant was guilty of negligence with regard to the permeation of urine into the cellar from the annex of the stable, and from that into the plaintiff's house. Now the defendant meets that with the overwhelming preponderance of evidence that there is to-day, and there was last week, and the week before, and there was in 1892, and has been ever since, first a cellar filled with clay—and the common experience of every man

is that clay is, to a very large extent, impervious to water; that above that was concrete, above that was cement, above that was a wooden floor laid as closely as could be laid. Now, gentlemen, the plaintiff may take you to his cellar to-day and show you that there is water upon the wall, and, reasoning out that that water came from somewhere, you might not be convinced that it did not come from the defendant's stable, but before you find against the defendant you would have to find that the defendant had failed to do something which a reasonably cautious man ought to have done, and then you must ask yourselves the question what you would have done if you had been building a stable. Would you have put anything in the cellar better than clay; would you have put more concrete on the top of the clay; would you put more cement on top; would you use other than three-inch hemlock planks? You must be convinced that the negligence of the defendant was the cause of the injury, if injury was suffered by the plaintiff.] [3]

Defendant submitted, inter alia, the following points :

[3. The defendant Sanford was not bound by law to erect another wall close to his party wall to deaden the sound, nor to prevent odors from reaching the Fischer family. *Answer :* I decline that point, holding that it is for you to decide what, under the circumstances of this case, the defendant ought to have done.] [4]

[4. His failing to erect such a wall was not negligence. *Answer :* I decline to so charge, as that would be taking the case from you.] [5]

[6. The plaintiff has not shown that he tried to rent his house after he left it, and he cannot recover damage for loss of rent. *Answer :* I decline that point. He would be entitled, if you hold that under the law I have given you he is entitled to a verdict, to the difference between what he ought to have had—no stable there—and what he could have received—a stable there.] [6]

[8. In any case the plaintiff can recover no damages beyond the figures sworn to, and the only figures sworn to were $50.00, and $23.50. *Answer :* I decline that point, because, under the law that I have given you, it is for you to say how much the damages ought to be, if you find damages.] [7]

[9. Under all the testimony the verdict must be for the defendant. *Answer :* I decline that point.] [8]

The court charged the jury, inter alia, as follows:

[But in this case, having shown no effort to rent, he (plaintiff below) would be entitled to recover the difference between what he ought to have received for the rent of the house if there had been no stable there, and what he could have received for it with the stable there, in case you find that the stable diminished the rental value by reason of being negligently conducted.] [1]

Plaintiff asks for an exception on that portion of the charge, "Not entitled to recover rent for an empty house, nor entitled to recover for diminution in rental value."

[The Court, continuing: I want to say to you if you believe that Mr. Fischer's house was absolutely unrentable, that nobody would have it; that he could not have rented it if it had been for $3.00, or $5.00, or $17.00 a month; that if it was deprived of all rental value, he would be entitled to recover from Mr. Sanford the difference, whatever it would have brought, from the defendant's negligence.] [9]

Exception withdrawn.

Plaintiff also asks for an exception to that portion of the charge, "There was no evidence of an examination of the floor by the plaintiff."

The Court: Was there?

Mr. Westbrook: Mr. Plowman went in there, and Mr. Herrick went in there.

[The Court, continuing: Gentlemen, I do not want to be in the slightest degree unfair with the evidence. In fact I would much rather have not referred to the evidence at all. If you recollect that Mr. Plowman and Mr. Herrick said anything about the examination of that floor, let that alter what I said with regard to the examination by the plaintiff of the floor.] [10]

Verdict for plaintiff for $1,500. A remittitur being filed a judgment was entered for $600. Defendant appealed.

*Errors assigned* were (1) to portions of the judge's charge, reciting same. (2, 3) Answers to plaintiff's points, reciting points and answers. (4–8) Answers to defendant's points, reciting points and answers. (9, 10) To portions of the judge's charge, reciting same. (11) In entering judgment for plaintiff on the verdict of the jury.

*E. Hunn, Jr.*, for appellant.—The main point on which plaintiff relied and on which he continually harped was, "A stable in a city is a nuisance, per se." But the Supreme Court has declared just the contrary in Carson v. Bromley, 184 Pa. 549. See also Keiser v. Gas Co., 143 Pa. 276, 290.

The law is that in order to recover damages in a case like this, there must be some negligence on the part of the defendant, and not only that, but the burden of proof is upon the plaintiff to show the negligence. He must positively show by affirmative proof that the defendant was guilty of negligence either in the original construction of the adjoining property, of which I do not think there is any evidence here, or in the maintenance of the adjoining property: Keiser v. Gas Co., 143 Pa. 276, 290.

When the verdict is evidently based on an erroneous measure of damages, the court will not hesitate to set it aside: Creed v. Fisher, 9 Ex. 472; Ray v. Jeffries, 86 Ky. 367; Ellsworth v. Central R. R. Co., 34 N. J. L. 93.

The verdict is one of those Robin Hood monstrosities which arise from a jury that does not understand the charge, and blindly determines to take the bit in its mouth and give the plaintiff a handsome sum, simply because he complains, or because he needs the money, and they think the defendant can spare it.

*Charles K. Westbrook*, for appellee.—This case was brought upon two theories: first, that although a lawful business the stable became a nuisance in the manner in which it was built and kept; and, secondly, that the defendant had been guilty of negligence in constructing and maintaining his stable.

The learned trial judge, it seems to us, erred in confining the case to negligence, as it has been frequently held in this state, and by the courts of other states entitled to respect, that a lawful business can be so conducted as to become an actionable nuisance: Pottstown Gas Co. v. Murphy, 39 Pa. 257; Haugh's Appeal, 102 Pa. 42; Hauck v. Pipe Co., 153 Pa. 366.

In Pennsylvania the jury are the sole judges of negligence where the testimony is conflicting: Wilson v. North Side Traction Co., 10 Pa. Superior Ct. 325; Phila., Wilm. & Balt. R. R. Co. v. Alvord, 128 Pa. 42.

We respectfully submit that the charge of the court below, and the affirmation or denial of points was strictly in accordance with the law, and that no error was committed by the trial judge, so far as the defendant has any right to complain. As a matter of fact the charge was very much in favor of the defendant, but the court very properly and with customary impartiality left the facts of the case to be found by the jury, and the amount of damages to be fixed by them.

OPINION BY BEEBER, J., January 17, 1900:

This case was tried upon the right theory. The jury were told by the court that the mere establishment of defendant's livery stable at the place complained of did not afford a ground for recovery; that a verdict could be found against the defendant only upon one of two grounds, either because the defendant had negligently constructed his livery stable, or because he had negligently conducted it after its construction; that the burden of proving defendant's negligence in this respect was on the plaintiff, and that no damages could be found unless they were such as the evidence showed resulted from negligence. Authority for this is found in Keiser v. Gas Co., 143 Pa. 276, and Robb v. Carnegie, 145 Pa. 324.

The second and third assignments of error are to the answers of the court below to the plaintiff's second and fourth points. These two points requested the court substantially to charge that if the jury believed from the evidence that the use and enjoyment of plaintiff's property, or the health of his family, were injuriously affected by the noise of the stamping of horses at night, by foul odors, water and urine, or by cockroaches, coming from defendant's stable, they could take these things into consideration in arriving at a verdict. In answer to them the court said that they could consider all these matters, but that they did not afford a ground of recovery unless the jury were satisfied that they were caused by the defendant's negligence. As he had already told them that the defendant must be found guilty of negligence either in the construction or operation of his stable before there could be a recovery, we do not see how the jury could fail to understand that they were only to consider the matters named in the points if they found the defendant negligent in one of these two respects. The defendant can-

not complain because he at the same time intimated to the jury in strong terms that in his opinion the evidence in favor of defendant preponderated.    There is no valid ground of objection to the learned court's answers to these points.

The fourth and fifth assignments are to the refusal of the court below to affirm the third and fourth points submitted by the defendant.    These points, in effect, ask the court to charge that the defendant was not bound to erect another wall close to his party wall to deaden the sound or to prevent odors from reaching the plaintiff's family, and that his failure to do so was not negligence.    The court declined to affirm these points upon the ground that it was for the jury and not the court to say under the facts of the case, what, if anything, the defendant ought to have done other than what he did to prevent the injury to plaintiff's property.    This was clearly right.    A large amount of testimony had been given to show just what the defendant did, both when he built the stable and whilst he was operating it.    All this had to be considered by the jury because it was the proper tribunal to determine the question whether the defendant had been negligent either in building or in operating.    That the court's answer to these points was correct is so clear that further discussion is unnecessary.

The first, sixth, seventh and ninth assignments complain of the court's instruction to the jury on the question of the extent of the plaintiff's damages.    It is insisted by the appellant that there was error by the court below in its directions to the jury as to the difference between the rental value of the plaintiff's property before the stable was established and afterwards.    The court explained to the jury that if the plaintiff was entitled to recover anything at all it was to be an amount equal to the extent of the injury caused by the defendant's negligence.    In considering this question it was proper for the jury to take into consideration the difference in the rental value of the property before the stable was either negligently constructed or negligently operated and afterwards; also whether the sickness in the plaintiff's family was caused by the defendant's negligence, as well as the cost or expense to the plaintiff in moving from the premises, provided he was compelled to do so by the defendant's negligence.    There is nothing in Keiser v. Gas Co., 143 Pa. 276, that conflicts with this measure of damages.

Whilst there is language in the opinion in that case to the effect that a loss in the rental value of real estate by reason of the establishment of an undesirable business in one's vicinity does not give a cause of action, this must be understood to mean that the mere establishment of such a business, apart from the question of negligence in establishing it or conducting it, does not give such a cause of action. It appears, both in that case and in many others, that the loss of rental value is proper for consideration in a case where the injury is caused by negligent construction or operation. One of the most recent is Herbert v. Rainey, 162 Pa. 525.

The tenth assignment of error is to that part of the charge of the learned court in which he told the jury that if they recollected that certain witnesses had said anything about an examination of the floor they should not heed what he had previously said in his charge on this subject. This was entirely proper. The learned judge in his charge had said that there had been no testimony offered by the plaintiff as to an examination of the floor of the stable, but when his attention was called to the fact that there was testimony to that effect, it was very proper for him to say what he did to the jury. The eighth assignment of error need not be noticed. This was not a case where binding instructions could have been given for a defendant, and the eleventh assignment is merely formal. We are satisfied that this case, as we have said, was tried upon the right theory and that no errors of law have been committed by the court below. All the assignments of error are overruled.

Judgment affirmed.


PER CURIAM, January 17, 1900:

The above opinion was written by Judge BEEBER during his term of office as a member of this court, the case having been duly assigned to him for that purpose. It is now adopted and filed as the opinion of the court.